UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE HO**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MOHD HAFIZ LOCKMAN,<br>MOHD YUZAIMI YUSOF, and<br>KHANH THUONG NGUYEN,<br><br>Defendants. | **INDICTMENT**<br><br>26 Cr.<br><br>**26 CRIM 203** |

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury charges:

1. From at least in or about July 2020 through at least in or about February 2026, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, executed a fraudulent scheme to steal more than $20 million. LOCKMAN, YUSOF, and NGUYEN were senior personnel at the United States subsidiary of a major Malaysian telecommunications company, and they used their positions to execute a sprawling fraud through false statements, forged records, fictitious transactions, and corporate and individual impersonations. The defendants deceived counterparties, suppliers, auditors, and supervisors. Through this scheme, the defendants diverted millions of dollars from their employer into accounts controlled by LOCKMAN, who used portions to pay personal credit card bills, make mortgage payments, and fund personal brokerage and investment accounts, while funneling smaller portions to YUSOF and NGUYEN.

<u>LOCKMAN, YUSOF, and NGUYEN Stole from Telekom Malaysia</u>

2. At all times relevant to this Indictment, Telekom Malaysia Berhad (the "Parent

Company") was a major telecommunications company headquartered in Kuala Lumpur, Malaysia, that provided television, networking, and broadband internet services to customers in Malaysia and internationally. Telekom Malaysia (USA) Inc. (the "American Subsidiary") was a wholly owned U.S. subsidiary with offices in California, Nevada, and Virginia whose primary business was selling access to high-capacity international broadband infrastructure—including fiber optic network capacity—to technology companies and other clients in the United States. The Parent Company approved major American Subsidiary contracts and financial transactions from headquarters in Kuala Lumpur, relying on American Subsidiary management as its primary source of information about U.S. deals and operations.

3. From at least in or about June 2020 through at least on or about February 14, 2026, MOHD HAFIZ LOCKMAN, the defendant, was the Regional Director of the American Subsidiary; MOHD YUZAIMI YUSOF, the defendant, was the Manager of Data Sales for the American Subsidiary; and KHANH THUONG NGUYEN, the defendant, was the Manager of Finance and Human Resources Administration for the American Subsidiary. While employed at the American Subsidiary, the defendants, who for decades lived and worked in the United States, pursued a multifaceted scheme to misappropriate assets and divert payments from the Parent Company and the American Subsidiary (collectively, "Telekom Malaysia"). The defendants' scheme involved four interconnected frauds: (i) overstating to the Parent Company the volume of broadband capacity the American Subsidiary had agreed to sell to customers, selling the unauthorized excess to third parties, and pocketing the proceeds of those unauthorized sales; (ii) fabricating a supplier of goods and intercepting payments Telekom Malaysia intended for a legitimate supplier; (iii) concocting employment records for ghost employees and collecting the salaries of those "employees"; and (iv) forging business expense documentation to obtain

reimbursements for those invented expenses.

*The Excess Capacity Fraud*

4. By at least in or about June 2020, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, devised a scheme to sell Telekom Malaysia's broadband capacity without the Parent Company's authorization and to divert the proceeds of those sales to accounts under their control. To obtain unauthorized access to that capacity, the defendants engaged in a series of deceptive acts and made several material misrepresentations to the Parent Company. For example:

a. On or about July 6, 2020, the Parent Company's Special Operations Committee met to review LOCKMAN's request to approve the sale of eight terabytes of capacity for approximately $54 million to a particular customer that is a multinational corporation headquartered in the United States ("U.S. Customer-1"). During the meeting, LOCKMAN misrepresented to the Parent Company that the contract price was "the best we can get from" U.S. Customer-1, and that U.S. Customer-1 wanted a lower price. In reality, $54 million was the price the American Subsidiary charged U.S. Customer-1 for six terabytes of capacity, not eight terabytes. Following LOCKMAN's misrepresentations during that meeting, the Parent Company approved the sale of eight terabytes to U.S. Customer-1 for $54 million.

b. After receiving the Parent Company's approval, YUSOF prepared and signed two versions of the sales contract: one version for U.S. Customer-1 that memorialized a sale of six terabytes and another version for the Parent Company that memorialized a sale of eight terabytes. Both versions included the signature of one U.S. Customer-1 representative and the signed initials of another U.S. Customer-1 representative, who was based in the United States (collectively, the "U.S. Customer-1 Representatives"). But in fact, the U.S. Customer-1

Representatives had signed and initialed only the six-terabyte agreement, and the U.S. Customer-1 Representatives' signatures and initials were fraudulently and without authorization reproduced on the eight-terabyte agreement sent to the Parent Company. On or about December 21, 2020, YUSOF emailed both versions of the agreement to LOCKMAN and NGUYEN.

c. NGUYEN recorded the two versions of the agreement in a spreadsheet she maintained. In that spreadsheet, NGUYEN referred to the six-terabyte sales agreement as the "Actual SOFCA"—using Telekom Malaysia's abbreviated name for such agreements—and to the eight-terabyte agreement as the "Audit SOFCA."

5. After misappropriating the excess capacity from the Parent Company, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, arranged on multiple occasions for the sale of portions of that excess capacity to third parties, including a large U.S.-based internet services company and a subsidiary of a U.S.-based social media and technology company. To pocket the proceeds of those unauthorized sales and conceal them from the Parent Company, the defendants executed the sales through a "look-alike entity" and directed payments to bank accounts controlled by the defendants. Specifically, in or about 2021, LOCKMAN, in concert with YUSOF and NGUYEN, arranged for the incorporation in the British Virgin Islands of an entity with a name substantially similar to the American Subsidiary's legal name (the "Fake American Subsidiary"). The individual listed as the sole beneficial owner of the Fake American Subsidiary was a relative of LOCKMAN's with no relationship to the American Subsidiary. Additionally, LOCKMAN, in concert with YUSOF and NGUYEN, opened bank accounts in the name of the Fake American Subsidiary that LOCKMAN controlled as the authorized signatory and that were not known to the Parent Company. The defendants directed those who purchased the misappropriated excess capacity to remit payment to

the Fake American Subsidiary bank accounts, including an account maintained at a financial institution in Manhattan.

*The Fake Supplier Fraud*

6. MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, further effected their scheme to steal from Telekom Malaysia by impersonating a particular supplier of goods for the American Subsidiary ("Supplier-1") and capturing payments Telekom Malaysia had intended for Supplier-1.

7. In or about 2021, the American Subsidiary was to acquire a particular type of fiber cable from Supplier-1 and resell that cable to an affiliate of the Parent Company at a five-percent markup. Unbeknownst to the Parent Company, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, had caused the American Subsidiary to purchase the necessary cable from Supplier-1 at a total price of approximately $500,000. Accordingly, the American Subsidiary should have sold the cable to the Parent Company's affiliate for approximately $500,000 plus the five-percent markup. But the defendants represented to the Parent Company and its affiliate that the American Subsidiary had acquired the cable at a total price of approximately $2,880,000—nearly six times more than what the American Subsidiary actually paid. The American Subsidiary sold the cable to the Parent Company's affiliate for a total price of approximately $3,024,000, reflecting the five-percent markup. LOCKMAN, YUSOF, and NGUYEN then caused the American Subsidiary to transfer approximately $2,880,000—the amount that the American Subsidiary supposedly paid Supplier-1—to a bank account in the name of an entity with a name substantially similar to Supplier-1's legal name ("Fake Supplier-1") but that was secretly controlled by the defendants.

8. To accomplish the fake supplier fraud, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, falsified a series of

documents. For example:

a. LOCKMAN, YUSOF, and NGUYEN arranged for the creation of a fake order form from Fake Supplier-1, dated March 31, 2021, which was signed by LOCKMAN on behalf of the American Subsidiary and purportedly signed by an individual who they represented was an employee of Fake Supplier-1, but who was, in fact, an employee of Supplier-1 ("Supplier Employee-1"). Supplier Employee-1 did not sign or authorize the signing of that order form.

b. LOCKMAN, YUSOF, and NGUYEN created a fake master services agreement from Fake Supplier-1, dated March 31, 2021, which was signed by LOCKMAN on behalf of the American Subsidiary and purportedly signed by an individual who they represented was another employee of Fake Supplier-1, but who was, in fact, an employee of Supplier-1 ("Supplier Employee-2"). Supplier Employee-2 did not sign or authorize the signing of that agreement.

c. LOCKMAN, YUSOF, and NGUYEN created a series of fake invoices from Fake Supplier-1, for various dates in 2021 and 2022. The invoices requested that the American Subsidiary remit payment to the bank account that LOCKMAN, YUSOF, and NGUYEN created in the name of Fake Supplier-1.

9. In connection with this aspect of the scheme, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, created fake email addresses and phone numbers to deceive Telekom Malaysia's auditor, a multinational auditing firm with a significant U.S. presence ("Auditor-1"). Specifically, in or around February 2021, YUSOF created for Fake Supplier-1 a website and email addresses with a domain name that was similar to the domain name used by Supplier-1. YUSOF shared the credentials for the website and email accounts with LOCKMAN and NGUYEN. LOCKMAN, YUSOF, and NGUYEN arranged

for that website to redirect to Supplier-1's real website, to make Fake Supplier-1 seem affiliated with Supplier-1.

10. In or about May and June 2023, Auditor-1 asked KHANH THUONG NGUYEN, the defendant, for contact information for various suppliers of the American Subsidiary. NGUYEN emailed MOHD HAFIZ LOCKMAN, the defendant, a draft of her response to Auditor-1, which contained supposed contact information for Fake Supplier-1, including the email addresses discussed above and phone numbers that were virtual phone lines created by, and under the control of, LOCKMAN, NGUYEN, and MOHD YUZAIMI YUSOF, the defendant. LOCKMAN asked NGUYEN if the contact information corresponded to "actual people" who worked at Supplier-1, in case Auditor-1 decided to "look them up online." After NGUYEN confirmed that they were "real people," LOCKMAN approved of NGUYEN sending the email to Auditor-1.

11. Additionally, KHANH THUONG NGUYEN, the defendant, used the email addresses described above to send multiple emails impersonating employees of Fake Supplier-1. NGUYEN reassured MOHD HAFIZ LOCKMAN, the defendant, that she would "change the computer time zone settings to Japan time zone [*i.e.*, the headquarters of Supplier-1,] before [using the Fake Supplier-1 email addresses to] reply [to the] auditor's email."

*The Ghost Employee Fraud*

12. MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, also effected their fraudulent scheme by impersonating employees of the American Subsidiary and capturing salaries and other payments intended for those employees.

13. For example, in or about August 2020, an employee of the American Subsidiary ("Employee-1") planned to move to Malaysia. MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, directed Employee-1 and another employee ("Employee-2") to set up a joint bank account at a U.S. bank (the "Joint Bank Account")

ostensibly so that Employee-1 could receive payments from the American Subsidiary for any future contracting work he performed. Employee-2 subsequently gave NGUYEN the online credentials for the Joint Bank Account, which were shared with LOCKMAN and YUSOF.

14. MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, caused the American Subsidiary's records not to reflect the fact of Employee-1's departure from full-time employment. From in or about August 2020 through in or about May 2025, the defendants caused the American Subsidiary to deposit into the Joint Bank Account the monthly salary that Employee-1 had earned as a full-time employee. Although some of those funds were used to pay for limited contracting services performed by Employee-1 abroad, the defendants used most of these funds for their own purposes and continued capturing those payments years after Employee-1 stopped all contracting work.

15. In or about late 2025, the Parent Company started asking questions about Employee-1, and MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, took steps to conceal their fraud. Specifically, around that time, LOCKMAN, YUSOF, and NGUYEN finally recorded in the American Subsidiary's records the departure of Employee-1, nearly five years after he actually left the company. As a result, a human resources officer in Malaysia (the "HR Officer") requested an exit interview with Employee-1 in approximately early 2026. To sustain the fraud, the defendants recruited another American Subsidiary employee ("Employee-3") to impersonate Employee-1 during the telephonic exit interview.

16. To prepare Employee-3 for the call with the HR Officer, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, created a script with answers to anticipated questions. The script praised NGUYEN as

"supportive" and spoke positively of American Subsidiary management. Following the exit interview phone call, the HR Officer requested a video call with Employee-1. In response, LOCKMAN, YUSOF, and NGUYEN arranged for Employee-3 to disguise his appearance through an artificial intelligence program. YUSOF purchased a high-quality laptop for Employee-3 to use, and LOCKMAN and YUSOF provided Employee-3 with a photo of the face he was to use. At the defendants' direction, Employee-3 used the artificial intelligence program to create the false appearance that Employee-3 was Employee-1 during the video call with the HR Officer.

17. In addition to misappropriating salary payments designated for Employee-1, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, caused the American Subsidiary to make payments to supposed interns (the "Fake American Subsidiary Interns"). Specifically, the defendants submitted to Telekom Malaysia fake offer letters and time sheets for multiple Fake American Subsidiary Interns who purportedly worked under the direction of YUSOF and Employee-2. In fact, at least one of those Fake American Subsidiary Interns was a relative of LOCKMAN's, and none of them performed actual work for the American Subsidiary. At least some of the payments to the Fake American Subsidiary Interns were made to the Joint Bank Account, which the defendants controlled, and were thus captured by the defendants.

*The Fake Expense Fraud*

18. MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, also effected their scheme to defraud Telekom Malaysia by seeking reimbursements for fabricated work expenses.

19. MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, repeatedly submitted false reimbursement forms and induced unearned payments. For example:

a. In or around December 2024 and January 2025, LOCKMAN approved reimbursement requests on behalf of YUSOF, NGUYEN, and others for purported travel, lodging, and other expenses incurred in connection with a supposed 2024 American Subsidiary retreat. In fact, there was no 2024 American Subsidiary retreat, and none of the expenses was actually incurred.

b. In or about December 2025, LOCKMAN and YUSOF requested reimbursement for a purported work trip to Argentina, which, in fact, never occurred. LOCKMAN and YUSOF enlisted the help of others to fabricate pictures purporting to show LOCKMAN and YUSOF in Buenos Aires so that those pictures could be shared with the Parent Company to document the trip.

c. In or about January 2026, LOCKMAN, YUSOF, and NGUYEN collaborated to request reimbursement for expenses incurred for a work trip that American Subsidiary employees supposedly made to Las Vegas in or about December 2025. In fact, no such trip occurred. When the Parent Company requested pictures from the trip, the defendants hastily organized a trip to Las Vegas and photographed scenes with Christmas trees to make it appear as though photographs had been taken in December 2025.

LOCKMAN, YUSOF, and NGUYEN Diverted Over $20 Million Through the Scheme

20. MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, spent and withdrew the funds they had diverted from Telekom Malaysia. From in or about February 2021 through in or about March 2026, the defendants spent or withdrew over approximately $20 million from the accounts they controlled, with over approximately $10 million being transferred to personal bank accounts in the name of LOCKMAN and millions of dollars more being spent directly from the Fake American Subsidiary bank accounts, including payments to accounts held in the name of LOCKMAN's wife and payments

on LOCKMAN's personal credit cards.

21. MOHD HAFIZ LOCKMAN, the defendant, used the misappropriated funds to, among other things, fund personal investment accounts, pay off his credit cards, make his mortgage payments, pay his utility bills, pay a travel agency for a vacation, and fund ATM withdrawals.

22. In addition, thousands of dollars of misappropriated funds were transferred directly from the Joint Bank Account to MOHD YUZAIMI YUSOF and KHANH THUONG NGUYEN, the defendants.

LOCKMAN and YUSOF Obstructed Investigation of the Scheme

23. On or about January 23, 2026, Telekom Malaysia suspended MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants; on or about February 14, 2026, Telekom Malaysia terminated the defendants' employment; and on or about March 26, 2026, Telekom Malaysia retrieved the defendants' company-issued laptops. During the period between their suspension and the surrender of their devices, LOCKMAN and YUSOF altered and deleted digital files to conceal their conduct and to obstruct any investigation of their scheme.

24. On or about February 3, 2026, the laptop issued to MOHD HAFIZ LOCKMAN, the defendant, was reformatted, erasing all files. On or about March 23, 2026 (that is, three days before the laptop was surrendered), a USB drive was inserted and new files were added to the laptop, in folders with work-related names such as "Customer Payments" and "Finance forms."

25. Similarly, on or about March 25, 2026 (that is, one day before the laptops were surrendered), the laptop issued to MOHD YUZAIMI YUSOF, the defendant, was used to run searches for "secure eraser" software and for methods of deleting empty or unused disk space. That same day, software that permits permanent deletion of data was installed on the laptop, the application was run twice, and the software was uninstalled approximately one hour later.

26. In addition, on or about February 16, 2026, after the defendants' employment was terminated, MOHD HAFIZ LOCKMAN and MOHD YUZAIMI YUSOF, the defendants, participated in a phone call with Employee-3 and encouraged Employee-3 to try to convince the Parent Company that LOCKMAN had not been involved in fraud. During that call, LOCKMAN admitted, in substance and in part, that the defendants had been keeping certain "excess capacity" deals "off the book[s]" and alluded to a "black ops" fund that held approximately tens of millions of dollars.

Statutory Allegations

27. From at least in or about July 2020 through at least in or about February 2026, in the Southern District of New York and elsewhere, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

28. It was a part and an object of the conspiracy that MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, LOCKMAN, YUSOF, and NGUYEN agreed to engage in a scheme to obtain money and property from Telekom Malaysia by (i) overstating to the Parent Company the volume of broadband capacity that customers wished to purchase, selling

the excess capacity to third parties, and diverting the proceeds of those unauthorized sales, (ii) creating a fictitious supplier and diverting payments from Telekom Malaysia to accounts in the name of the fictitious supplier under the defendants' control, (iii) creating fictious employment records to collect payments made to fictious employees and interns of the American Subsidiary, and (iv) fabricating work-related expenses and requesting reimbursement for those fake expenses, all of which would and did involve wire transfers to and from financial institutions in the Southern District of New York and elsewhere.

(Title 18, United States Code, Section 1349.)

**COUNT TWO**
**(Wire Fraud)**

The Grand Jury further charges:

29. The allegations contained in paragraphs 1 through 26 of this Indictment are repeated and realleged as if fully set forth herein.

30. From at least in or about July 2020 through at least in or about February 2026, in the Southern District of New York and elsewhere, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, LOCKMAN, YUSOF, and NGUYEN engaged in a scheme to obtain money and property from Telekom Malaysia by (i) overstating to the Parent Company the volume of broadband capacity that customers wished to purchase, selling the excess capacity to third parties, and diverting the proceeds of those unauthorized sales, (ii) creating a fictitious

supplier and diverting payments from Telekom Malaysia to accounts in the name of the fictitious supplier under the defendants' control, (iii) creating fictious employment records to collect payments made to fictious employees and interns of the American Subsidiary, and (iv) fabricating work-related expenses and requesting reimbursement for those fake expenses, all of which would and did involve wire transfers to and from financial institutions in the Southern District of New York and elsewhere.

(Title 18, United States Code, Sections 1343 and 2.)

**COUNT THREE**
**(Aggravated Identity Theft)**

The Grand Jury further charges:

31. The allegations contained in paragraphs 1 through 26 of this Indictment are repeated and realleged as if fully set forth herein.

32. From at least in or about July 2020 through at least in or about February 2026, in the Southern District of New York and elsewhere, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, LOCKMAN, YUSOF, and NGUYEN transferred, possessed, and used the names and signatures of other persons during and in relation to the conspiracy to commit wire fraud and wire fraud violations charged in Counts One and Two of this Indictment—namely, the names, signatures, and initials of the U.S. Customer-1 Representatives, the name and signature of Supplier Employee-1, and the name and signature of Supplier Employee-2.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

## FORFEITURE ALLEGATION

33. As a result of committing the offenses alleged in Counts One and Two of this Indictment, MOHD HAFIZ LOCKMAN, MOHD YUZAIMI YUSOF, and KHANH THUONG NGUYEN, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and the following specific property:

a. Any and all funds in the Bank of America account ending in -1572 held in the names of Employee-1 and Employee-2;

b. Any and all funds in the Bank of America account ending in -5421 held in the name Hatching International LLC dba Kansai Technology;

c. Any and all funds in the Bank of America account ending in -3223 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

d. Any and all funds in the Bank of America account ending in -5095 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

e. Any and all funds in the Bank of America account ending in -1591 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

f. Any and all funds in the Bank of America certificate of deposit account ending in -4247 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

g. Any and all funds in the Bank of America certificate of deposit account ending in -5774 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

h. Any and all funds in the Bank of America certificate of deposit account ending in -4800 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

i. Any and all funds in the Bank of America account ending in -6362 held in the name of TM USA Inc.;

j. Any and all funds in the Charles Schwab account ending in -2453 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

k. Any and all funds in the Citibank account ending in -9973 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

l. Any and all funds in the Citibank account ending in -9787 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

m. Any and all funds in the Citibank account ending in -9698 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

n. Any and all funds in the E*TRADE account ending in -1258 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

o. Any and all funds in the Fidelity Investments account ending in -9821 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

p. Any and all funds in the Goldman Sachs account ending in -9678 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

q. Any and all funds in the JPMorgan Chase account ending in -8362 held in the name of TM USA Inc.;

r. Any and all funds in the Maybank account ending in -5017 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

s. Any and all funds in the Morgan Stanley account held in the name of

MOHD HAFIZ LOCKMAN, the defendant;

t. Any and all funds in the Oversea-Chinese Banking Corporation account ending in -4201 in the name of Fake Supplier-1;

u. Any and all funds in the Robinhood Markets account held in the name of MOHD HAFIZ LOCKMAN, the defendant;

v. Any and all funds in the Synchrony Bank account ending in -7921 held in the name of MOHD HAFIZ LOCKMAN, the defendant;

w. Any and all funds in the Synchrony Bank account ending in -4001 held in the name of the wife of MOHD HAFIZ LOCKMAN, the defendant;

x. Any and all funds in the WeBull account held in the name of MOHD HAFIZ LOCKMAN, the defendant; and

y. Any and all funds in the Wells Fargo account held in the name of MOHD HAFIZ LOCKMAN, the defendant.

**Substitute Assets Provision**

34. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

[redacted] 5/19/26
FOREPERSON

JAY CLAYTON
United States Attorney